UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRACIE L. COCHRAN,<br><br>     Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>     Defendant. | Case # 1:18-cv-1324-DB<br><br>MEMORANDUM DECISION<br>AND ORDER |

## INTRODUCTION

  Plaintiff Tracie L. Cochran ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied her application for disability insurance benefits ("DIB") under Title II of the Act, and her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 16).

  Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 13, 15. No further briefing is before the Court. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 13) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 15) is **GRANTED**.

## BACKGROUND

  Plaintiff protectively filed her applications for DIB and SSI on February 22, 2013. Transcript ("Tr.") Tr. 333-340. Plaintiff alleged disability beginning December 26, 2011 (the disability onset date), due to: "T6-7 disc herniation, awaiting surgery; depression; anxiety; and heart condition." Tr. 404. Plaintiff's claims were denied initially on May 14, 2013 (Tr. 177-91),

after which she filed a written request for a hearing on May 16, 2013 (Tr. 193-94). A hearing was held on September 3, 2014, resulting in a partially favorable decision issued on June 19, 2015. Tr. 141-54. On August 18, 2015, the Appeals Council reopened that decision (Tr. 229-35) and remanded the case for rehearing (Tr. 159-68). Administrative Law Judge William M. Weir (the "ALJ") presided over a second hearing in Buffalo, New York, on October 27, 2017. Tr. 10. Plaintiff appeared and testified at the hearing and was represented by Richard G. Abbott, an attorney. *Id*. Also appearing and testifying were medical expert Frank L. Barnes, M.D., and vocational expert ("VE") Millie Droste, R.N., each via telephone. *Id*. The ALJ issued an unfavorable decision on February 14, 2018, finding that Plaintiff was not disabled. Tr. 10-20. On October 3, 2018, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the

Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## **ADMINISTRATIVE LAW JUDGE'S FINDINGS**

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his February 14, 2018 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016;

2. The claimant has not engaged in substantial gainful activity since December 26, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*);

3. The claimant has degenerative disk [sic] disease, vertigo, and headaches, each of which constitutes a severe impairment (20 CFR 404.1520(c) and 416.920(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926);

5. The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)[1] except is limited to unskilled work, no work around unprotected heights, use of tools, instrumentalities or chemicals;

6. The claimant is unable to perform any past relevant work (20CFR 404.1565 and 416.965);

7. The claimant was born on February 20,1973 and was 38 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963);

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964);

---

[1] "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a));

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 26, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 10-20.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on February 22, 2013, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 20. The ALJ also determined that based on the application for supplemental security benefits protectively filed on February 22, 2013, the claimant is not disabled under section 1614(a)(3)(A) of the Act. *Id.*

## ANALYSIS

Plaintiff asserts three points of error. First, Plaintiff argues that the ALJ erred in his evaluation of the medical opinion evidence. *See* ECF No. 13-1 at 19. Specifically, Plaintiff takes issue with the ALJ's assessment of the opinions of Frank L. Barnes, M.D. ("Dr. Barnes"), and Edward Simmons, M.D. ("Dr. Simmons"). *Id.* As noted above, Dr. Barnes is the medical expert who testified at Plaintiff's February 14, 2018 hearing. Tr. 10, 53-61. The record reflects that Dr. Simmons treated Plaintiff for her back pain. *See* Tr. 990-1007. Second, Plaintiff argues that the ALJ failed to identify the evidence that was inconsistent with her subjective complaints. *See* ECF No. 13-1 at 21. Finally, Plaintiff alleges that because the ALJ discounted unspecified treating physician opinions, it created an evidentiary gap in the record. *Id.* The Commissioner responds that the ALJ thoroughly considered the evidence of record and properly determined that Plaintiff's

functional limitations would not prevent her from performing a range of simple, sedentary work. *See* ECF No. 15-1 at 3.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the entire record in this case, the Court finds that the ALJ appropriately considered Plaintiff's history of disc surgery; assessed degenerative disc disease as a severe impairment; and assessed significant RFC limitations accordingly, including the restriction to sedentary work. Tr. 13-18.

I. **The ALJ Properly Considered The Medical Opinion Evidence of Record.**

   A. **Dr. Barnes**

As noted above, Dr. Barnes testified as a medical expert at Plaintiff's second hearing. Tr. 45. The ALJ assigned great weight to Dr. Barnes' opinions that Plaintiff's impairments were not of listing-level severity and that Plaintiff was capable of the exertional requirements of sedentary work. Tr. 17, 45-55. The ALJ noted that Dr. Barnes was the last medical professional to review the entire record, and his opinion was consistent with the overall record. Tr. 17. The ALJ also noted that Plaintiff's April 2017 examination revealed negative straight leg raising ("SLR") with no significant functional deficits; and deep tendon reflexes ("DTR") of the bilateral upper extremities symmetric at 1+ throughout and 2+ in the bilateral lower extremities. Tr. 17, 1393.

Plaintiff argues that the ALJ failed to properly evaluate Dr. Barnes' medical testimony and appears to challenge Dr. Barnes' qualifications to testify as a medical expert. *See* ECF No. 13-1

at 19-20. Specifically, Plaintiff complains that Dr. Barnes has never done a fusion surgery for a herniated thoracic disc. *Id*. at 17. The Court finds Plaintiff's argument unpersuasive. Dr. Barnes is a board-certified orthopedic surgeon and is, therefore, a specialist in the area on which he was giving an opinion, namely Plaintiff's herniated disc condition. Tr. 45-55. While Dr. Barnes may have not performed surgeries specifically for a herniated disc, he has performed thoracic surgery and other lumbar spine surgeries. Tr. 46-47. Plaintiff presents no argument or authority for her challenge to Dr. Barnes' credentials on this basis.

Plaintiff's counsel stipulated to Dr. Barnes' qualifications at the hearing. Tr. 47. Plaintiff now claims she "stipulated to [Dr. Barnes'] qualifications with respect to her back problems, but not her neurologic problems" (ECF No. 13-1 at 11) and that "headaches, vertigo, and depression were outside his expertise" (*id*. at 17). However, the record reflects that Dr. Barnes only opined on Plaintiff's spine condition and Listing 1.04. Tr. 45-55. Thus, Plaintiff's argument in this regard is meritless. Moreover, the ALJ did not rely on any of Dr. Barnes' testimony in considering these conditions at any step of the sequential evaluation process. Tr. 13-18. Furthermore, Plaintiff fails to explain the relevance of her assertion that thoracic disc fusions are done by few spinal surgeons, have a low success rate, and that Dr. Simmons would not have performed the surgery unless Plaintiff had serious problems. *See* ECF No. 13-1 at 17.

Plaintiff also asserts that the MRI of her thoracic spine taken in April 2017, after her surgery, showed a worsening of her condition. *See* ECF No. 13-1 at 17. The ALJ considered the imaging to which Plaintiff refers, which showed progressive spondylosis at T6-7 compared to three years prior with a modest interval increase in the size of the disc herniation/protrusion that mildly effaced the thecal sac. Tr. 16-17, 1412. However, at T3-4, the hypertrophied ligamentum flava was stable and there was no cord compression or abnormalities at any other level. Tr. 1412. Moreover,

7

Dr. Barnes reviewed this imaging, but he noted that it does not correlate very well with Plaintiff's alleged symptoms, and his opinion and the ALJ's conclusion that Plaintiff could perform sedentary work was based on other evidence of record, including exams showing that Plaintiff had normal gait, no evidence of weakness, normal sensorium, and no evidence of nervous system damage from the herniated disc. Tr. 51, 54-55.

Based on the foregoing, the ALJ properly evaluated the expert medical opinion of the Dr. Barnes, and substantial evidence supports the ALJ's decision to give great weight to Dr. Barnes' opinions.

### B. Dr. Simmons

Plaintiff also alleges that the ALJ did not properly assess the opinions of Dr. Simmons. As noted above, Dr. Simmons treated Plaintiff for her back pain (*see* Tr. 990-1007), and was therefore, a treating physician. The opinions of Plaintiff's treating physicians should be given "controlling weight" if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record," 20 C.F.R. §§ 404.1527(c)(2). In this case, however, Plaintiff fails to identify any actual medical opinion rendered by Dr. Simmons. Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairment(s), including her symptoms, diagnosis and prognosis, what she can still do despite impairment(s), and her physical or mental restrictions. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

Plaintiff cites a few examination findings and diagnostic imaging findings from the medical records, but none of these findings represents a medical opinion from Dr. Simmons to which the ALJ could, or was required to, assign weight. Plaintiff notes that the ALJ relied on the exam from

April 2017, including the normal results but argues that the ALJ "ignored" the abnormal findings that she stood with a guarded cervical posture and had some exaggeration of normal thoracic kyphosis. *See* ECF No. 13-1 at 21. As noted above, these were objective findings, not opinions; but in any case, the ALJ expressly noted those findings. The ALJ also noted that the record demonstrated some limited range of motion and tenderness. but he determined that these findings, in conjunction with Plaintiff's normal gait, balance, reflexes, and strength, as well as the other evidence of record, the exam and the record as a whole supported the conclusion that Plaintiff could perform work with the limitations the ALJ assessed. Tr. 16, 17, 18. Similarly, Plaintiff repeats the findings from the April 2017 MRI (*see* ECF No. 13-1 at 22); but this is also objective evidence, not a statement or medical opinion from Dr. Simmons. Moreover, as discussed above, the ALJ properly considered the results of this MRI, as well as the clinical findings and the opinion of Dr. Barnes.

Plaintiff also notes that she had a cervical facet joint injection in July 2017. *See* ECF No. 13-1 at 22. Again, this was not a statement from Dr. Simmons that reflected a judgment about the severity of her impairments, but in any case, the ALJ considered that Plaintiff still experienced pain from her spine impairment and required an injection, and he accounted for this in the RFC. Tr. 18. As to what Plaintiff describes as Dr. Simmons' opinion regarding her allegedly worsening pain following surgery (*id*. at 21-22), this was not an opinion that reflected Dr. Simmons' judgment about the nature and severity of Plaintiff's condition. In fact, it was not even a statement from Dr. Simmons himself. Rather, it was a report from a physician assistant summarizing Plaintiff's subjective complaints. Tr. 1392-94.

In any case, as discussed above, the ALJ considered the evidence as a whole, assessed degenerative disc disease as a severe impairment, and imposed related limitations; and Plaintiff

has failed to identify any medical opinion that demonstrated limitations beyond those the ALJ assessed. Plaintiff notes that she also had the conditions of vertigo, migraines, and depression, but she fails to present any argument or logical link between the existence of these impairments and the ALJ's evaluation of Dr. Simmons's records. *See* ECF No. 13-1 at 22. Nevertheless, the ALJ found these to be medically determinable impairments, and, in fact, found that vertigo and migraines were severe impairments; discussed them in the RFC assessment; and imposed related RFC limitations. Tr. 13-18.

## II. The ALJ's Properly Assessed Plaintiff's Subjective Complaints.

Contrary to Plaintiff's arguments, the ALJ properly considered her subjective statements in assessing her RFC. When a claimant attempts to prove disability based on her subjective complaints, she must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of her alleged symptoms or evidence establishing that her medical condition could be reasonably expected to give rise to her alleged symptoms. See 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b); SSR 16-3p, 81 Fed. Reg. 14,166 (Mar. 16, 2016).2 If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but the claimant establishes that she has an impairment that could reasonably be expected to produce her alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on the claimant's ability to work. See 20 C.F.R. §§ 404.1529(c), (d), 416.929(c), (d); SSR 16-3p.

Plaintiff alleges that Dr. Barnes' testimony supports her allegations she was in constant pain and had to lie down half the day; and that the surgery did not lessen her pain. *See* ECF No. 13-1 at 17. However, Dr. Barnes actually stated that it was reasonable to assume that Plaintiff had some pain and limitations in functioning. Tr. 53. As noted above, he also stated that imaging does

not correlate very well with symptoms, and his opinion that Plaintiff could perform sedentary work was based on other evidence of record, including exams showing that Plaintiff had a normal gait, no evidence of weakness, normal sensorium, and no evidence of nervous system damage from the herniated disc. Tr. 51, 54-55. Thus, his testimony did not support that Plaintiff had disabling pain or limitations beyond those the ALJ assessed (Tr. 45-55). Moreover, the ALJ accepted that Plaintiff had some pain and limitations: he determined that while Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, her statements regarding the intensity, persistence, and functionally limiting effects of her alleged symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 16.

Plaintiff next argues that the ALJ did not identify the evidence that was inconsistent with her subjective complaints. *See* ECF No. 13-1 at 21. Plaintiff is incorrect. The ALJ discussed the medical records and other evidence that supported his evaluation of Plaintiff's subjective statements and his assessment of Plaintiff's RFC. Tr. 13-18. *See* 20 C.F.R. §§ 404.1529(c)(2)-(4), 404.1545(a)(3), 4016.929(c)(2)-(4), 416.945(a)(3); SSR 16-3p; SSR 96-8p. This included the objective clinical findings, discussed extensively by the ALJ, which did not support Plaintiff's allegations of disabling limitations. For example, physical examination revealed a 75% squat but normal gait and the ability to rise from the chair without difficulty. Tr. 16, 753. In January of 2012, Plaintiff had full but painful range of motion of her cervical spine in all directions. Tr. 16, 538. May 2012 examination showed 5/5 strength at the bilateral lower extremities including dorsiflexors, inverters, everters of the feet. Tr. 16, 511. However, a July 2012 back examination revealed 50% of normal rotation and lateral flexion; continued with some midthoracic tenderness and moderate spasms; lumbar flexion was 70-80 degrees and extension 15 degrees. Tr. 16, 553.

In January 2013, Plaintiff reported that she continued to experience intractable pain from her T6-7 disc herniation with decreased range of motion. Tr. 16, 593. In September 2014, Plaintiff had normal to guarded posture and ambulated with a stable gait pattern. Tr. 16, 660. Imaging in April 2014 revealed at the T4-5 level, interval development of small central posterior disc herniation/protrusion; at the T6-7 level, a stable small central posterior disc protrusion; and at the T3-4 level, there had been an interval increase in hypertrophied ligamentum flava on the left side. Tr. 16-17, 617. During a May 2013 examination, Plaintiff had 4/5 strength in upper and lower extremities; however, she was not putting forth full effort. Tr. 17, 600. She underwent anterior discectomy and fusion at T6-7 on July 15, 2014. Tr. 17, 651-655, 656. May 2015 treatment notes revealed full range of motion in the bilateral upper and lower extremities. Tr. 17, 791. She complained of imbalance and dizziness. Tr. 17, 900. Plaintiff had a diagnosis of chronic migraine headaches without aura, treated with Botox therapy. Tr. 17, 1405.

She continued to experience pain post-surgery and attended physical therapy. Tr. 17, 891-900. In June 2016, she was participating in some yoga. Tr. 17, 1086. In August 2016, she slipped and fell while trying to control a dog and again in February 2017 while hanging curtains. Tr. 17, 1365, 1385. She complained of continued pain through April 2017, despite her increased activity. Tr. 17, 1079, 1412. Recent examinations revealed she had guarded cervical posture with some exaggeration of her normal thoracic kyphosis. Tr. 17, 1393. She continued with facet joint interjection through 2017. Tr. 17, 1406. In sum, the objective clinical findings demonstrated the existence of severe impairments that resulted in some work-related limitations; however, they simply did not show that Plaintiff could not perform work with the significant limitations that the ALJ assessed; and the ALJ accounted for the limitations demonstrated by the record by reducing

the RFC to sedentary with restrictions on exposure to hazards to accommodate limitations due to vertigo. Tr. 13-18.

Aside from the objective evidence, the opinion evidence also did not support Plaintiff's allegations of disabling limitations (including that she could only stand and/or walk for about 15 minutes). On January 20, 2017, Plaintiff was examined at the request of the agency by Nikita Dave, M.D. ("Dr. Dave"). Tr. 751-60. Dr. Dave opined that Plaintiff had to avoid ladders, heights, and sharp, dangerous, or heavy equipment and machinery; and had mild to moderate limitations for prolonged sitting and standing with more moderate limitations for lifting, carrying, pushing and pulling. Tr. 17, 751-760. The ALJ assigned partial weight to this opinion because it was based on an objective examination and generally consistent with the findings resulting from the examination. For example, Plaintiff had observable limitations in the cervical, thoracic, and lumbar spine, but continued to have 5/5 strength in the lower extremities. Despite the 5/5 strength, Dr. Dave opined that Plaintiff could stand and walk a total of 3 hours in an 8-hour workday. Given the continued pain, migraines, and dizziness Plaintiff experienced, the ALJ found that Plaintiff would be limited to standing or walking no more than 2 hours total in an 8-hour workday, but Dr. Dave's opinion did not support Plaintiff's allegations of more restrictive standing and walking than the ALJ found, i.e., the amount consistent with sedentary work.

Orthopedic surgeon Cameron Huckell, M.D. ("Dr. Huckell"), opined that Plaintiff could work full-time/full duty as a cashier. Tr. 17, 129. The ALJ assigned this opinion partial weight because Dr. Huckell did not define the requirements of those job duties and did not cite to specific medical findings to support his opinion. Nevertheless, the doctor's opinion that Plaintiff could work full-time at a light job does not support Plaintiff's claim of disability. Dr. Abrar assessed mild limitations in Plaintiff's ability to sit, stand, climb, push, pull, or carry heavy objects;

13

however, Plaintiff did not put forth full effort and was unwilling to perform some parts of the exam. Tr. 18, 600. While the ALJ assigned little weight to this opinion because Plaintiff did not sufficiently cooperate with the examination, Dr. Abrar's opinion similarly does not support Plaintiff's allegations.

The ALJ gave partial weight to the June 2012 opinion of Plaintiff's primary care physician Thomas Bogner, M.D. ("Dr. Bogner"), that Plaintiff could work a sedentary job with no repetitive bending or twisting, no lifting greater than 10 pounds regularly, and lifting 15 pounds occasionally. Tr. 18, 552, 1156. As the ALJ noted, that there had been substantial evidence of record submitted after Dr. Bogner's opinion regarding Plaintiff's functioning that showed Plaintiff was limited to sedentary work, standing no more than 2 hours in an 8-hour day, and limited by pain to lifting no more than 10 lbs. Tr. 18. However, like the other opinions, it did not support Plaintiff's claims of disability. Furthermore, as discussed above, Dr. Barnes' opinion also did not support Plaintiff's allegations of disability, and the ALJ properly gave great weight to his opinion that Plaintiff could perform the exertional requirements of sedentary work. Tr. 17, 45-55. Additionally, as noted by the ALJ, the consultative exams showed that Plaintiff was a possible malingerer who did not cooperate fully with exams or give her best effort, which also detracted from the credibility of her subjective complaints. Tr. 14, 15, 17, 18, 600, 746.

In sum, the ALJ's RFC assessment was supported by the overall evidence of record. Multiple examinations revealed Plaintiff was able to walk with a normal gait and able to stand on heels and toes showing good balance and coordination. Tr. 18, 510, 527, 623, 769, 1393. The April 2017 examination revealed that Plaintiff's straight leg raising was negative with no significant functional deficits and DTRs of the bilateral upper extremities were symmetric at 1+ throughout; 2+ in bilateral lower extremities. Tr. 18, 1393. Despite undergoing discectomy and fusion, Plaintiff

14

continued to need injections to alleviate symptoms. However, the examination with Dr. Dave in January 2017 showed Plaintiff had 5/5 strength in proximal and distal muscles bilaterally. Tr. 18, 753. Plaintiff maintained good strength, but had limitations secondary to pain, vertigo, and migraines. Tr. 18. The ALJ accounted for the limitations due to these conditions in the RFC, and Plaintiff failed to show that additional limitations were warranted. In short, Plaintiff was limited to perform work on a sustained basis consistent with the ALJ's RFC assessment. Tr. 18.

### III. The ALJ Adequately Developed The Record.

In her final cursory argument, Plaintiff alleges that because the ALJ discounted unspecified treating physician opinions, it created an evidentiary gap in the record. *See* ECF No. 13-1 at 25. Plaintiff provides no support for this contention. There was no evidentiary gap because the record reflects that Plaintiff underwent several consultative exams; the record contained extensive treatment notes; and the medical opinions, including Dr. Barnes' opinion, supported the RFC assessment. Plaintiff attempts to shift the burden to prove she was disabled onto the Commissioner, but it is Plaintiff who bears the burden of proving she is disabled, and "[i]t is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so." *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If Plaintiff wanted a medical source statement from any of her treating doctors, she should have obtained one.

Moreover, it is speculation to suggest that an opinion from a treating doctor or anyone else would help Plaintiff, and, as discussed above, the evidence did not demonstrate that she had additional imitations beyond those the ALJ assessed. *See Pellam v. Astrue*, 508 F. App'x 87 (2d Cir. 2013) (citing 20 C.F.R. § 404.1513(b)(6) (lack of a medical source statement does not render the record incomplete), the court held that the ALJ did not have a further obligation to acquire a medical source statement from one of claimant's treating physicians); *Reices-Colon v. Astrue*, 523

F. App'x 796 (2d Cir. May 2, 2013) (court rejected claimant's argument that the ALJ had no substantive basis for finding her symptoms had improved with treatment and, therefore, should have sought additional evidence from a treating source; court pointed to specific evidence in the record supporting the ALJ's finding and conversely noted that claimant identified no specific record that was missing and there was no error in the ALJ's development of the record); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29 (2d Cir. 2013) (Commissioner's regulations at §§ 404.1513(b)(6) and 416.913(b)(6) provide that an ALJ securing a medical source statement is discretionary and that the lack of a statement does not render the source's medical report incomplete; ALJ did not need to order a consultative exam where Plaintiff's allegations of disabling limitations were unsupported by other record evidence and not alleged by claimant as a potential disability; and ALJ need not request medical source statements particularly where the record was "quite extensive" and contained sufficient evidence from which the ALJ could assess claimant's RFC).

Inasmuch as Plaintiff has cited contrary evidence that could possibly support a finding of disability, she misconstrues the nature of the Court's review, which is limited to substantial evidence. To justify remand, Plaintiff must assert evidence that compels a finding of disability; where, as here, there is more than a scintilla of evidence to support the ALJ's findings of fact, the decision must be upheld. *See Stanton v. Astrue*, 370 F.App'x 231, 234 (2d Cir. Mar. 24, 2010) (courts "have no reason to second-guess the credibility finding . . . where the ALJ identified specific record-based reasons for his ruling").While Plaintiff may disagree with the ALJ's conclusion, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, No. 16-02672, 2018 WL 459678, at *3 (2d Cir. Jan. 18, 2018) (internal

citations and quotations omitted). That is not the case here. Substantial evidence supported the ALJ's RFC, and despite Plaintiff's assertions to the contrary, the record simply does not support her claims of more severe impairments.

Based on the foregoing, the Court finds no error in the ALJ's assessment of the medical opinion evidence and other evidence of record, or his RFC finding.

## **CONCLUSION**

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 13) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 15) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

*/s/ Don D. Bush*
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE